### RIESTER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department.   April 9, 1897.)

CONTRIBUTORY NEGLIGENCE—EVIDENCE—ACCIDENT AT RAILROAD CROSSING.

Decedent was killed by a locomotive at defendant's station. No one saw the accident except the engineer, who testified that decedent was about 15 feet in front of the engine when he first saw him. It did not appear what decedent went on the track for. There was a platform on each side of the tracks, but passengers were forbidden to go on the tracks from one platform to the other, and a bridge was provided for that purpose. The two middle tracks were used by trains which did not stop at the station, and were inclosed with a picket fence, in which there were sliding gates for the use of defendant's employés. The gates were always kept closed, but not locked. The train by which decedent was struck could be seen for 900 feet from the station. *Held*, that freedom from contributory negligence was not shown.

Appeal from trial term, New York county.

Action by Margarethe Riester, as administratrix of Joseph Riester, deceased, against the New York Central & Hudson River Railroad Company, to recover damages for the alleged negligent killing of plaintiff's intestate. From a judgment entered on a decision of the court dismissing the complaint at the close of plaintiff's case for want of proof of a cause of action, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Flamen B. Candler, for appellant.
Daniel W. Tears, for respondent.

WILLIAMS, J.   The action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The accident from which the death resulted took place in the evening of the 21st day of March, 1894, at the defendant's station at Williamsbridge, in the city of New York, on the line known as the "New York & Harlem Railroad." The deceased did not recover consciousness, after the accident, before his death. All that the evidence disclosed as to the accident, and the circumstances surrounding the deceased and leading up to the accident, was that the deceased was a business man about 34 years of age, and had for years before the accident lived and car-

ried on business as a butcher in Harlem, in the city of New York. He left his home and place of business about 1 o'clock on the day of the accident, saying that he was going to Williamsbridge to look at some lots he thought of purchasing. After the accident there was found in his pocket a ticket for the Harlem Division of the defendant's road, issued the day of the accident, being a return coupon from Williamsbridge to 125th street. We may assume, therefore, that the deceased on the day of the accident rode upon one of the defendant's trains from 125th street to Williamsbridge, and left the train at that station, although no witness testified to seeing him do so. There were four tracks passing the station at Williamsbridge on the defendant's road. The two middle tracks were devoted to the use of express or through trains which did not stop at that station, and these two tracks were inclosed within picket fences running the whole length of the station. The two other tracks were devoted to the use of local trains which stopped at the station, and there was a platform on either side for the accommodation of passengers in entering and leaving the trains; that is, one platform, east of the most easterly track, for the south-bound trains, and another, west of the most westerly track, for the north-bound trains. The tracks through the station were some 24 feet below the streets, and the only approaches to the two platforms were at the southerly end of the station from the bridge which carried Aldon avenue over the tracks. There were signs at the head of each stairway on the bridge indicating to which trains the stairway led, and a sign also at the foot of each stairway indicating which way the trains stopping at that platform went. There was a station building, waiting room, and ticket office upon each platform, and the platforms were about 300 feet long. The bridge, stairways, and platforms were well lighted in the evening, and the signs at the head and foot of each stairway were plainly visible at night as well as in the daytime. There was a plank crossing, about in the middle of the station, 15 feet 6 inches wide, running across the tracks between the two platforms, with sliding gates in the two picket fences inclosing the two middle tracks. This crossing was for the use of the employés alone, and others were not allowed to use it. The gates were kept closed, though not locked, and were closed at the time of the accident. There were about 62 trains passing and which stopped at the station between early morning and late evening of each day, one-half of which stopped at each of the platforms, and in addition to this there were about 40 other trains passing the station on the other tracks. A local train, bound north, passed the station at 6:17 p. m. on the day of the accident. There was another local train, bound north, due at the station at 6:36 p. m. The accident occurred when the 6:36 train, bound north, came into the station. It was the engine of this train that struck the deceased. Just before 6:30 p. m., the deceased was seen upon the platform for north-bound trains, and he was then walking southerly along that platform. There were but few persons upon the platform at that time, or just before the accident. The deceased was not seen, after the time he was walking along the platform of

the north-bound trains, before the accident, by any one except the engineer upon the engine that struck him. When deceased left the platform of the north-bound trains, and where he went, and what he was doing just before he was struck by the engine, does not appear, except from the statements of this engineer. The engineer testified that, the first he saw of the deceased, he was only about 15 feet in front of the engine, between the rails of the track on which the train was approaching, and a little nearer the rail next to the fence than that next to the platform, and was north of the plank crossing over the tracks, and it was then impossible to stop the train before the engine struck the deceased. The engineer made all the effort he could, but failed. After the train stopped, the deceased was found lying between the east rail of the track and the picket fence, and 10 to 15 feet north of the plank crossing over the tracks. The train, as it approached the station, came around a curve, but was within full sight of the platform and track of the north-bound local trains for a distance of 900 feet before it struck the deceased. When the deceased arrived at the Williamsbridge station that day, he must have alighted on the platform of the north-bound trains, and we must assume he knew and understood that he must get upon the return south-bound train from the platform on the other side of the four tracks. He had resided for some years in and about New York, and must have understood that passengers were not permitted to cross over the tracks through the picket fence and gates, which were kept closed, and that, if he desired to go from one platform to the other, he should do so by way of the staircases and the bridge over the tracks. Whatever may be said as to the alleged negligence of the defendant, we are unable to conceive any theory upon which the jury would have been justified, under the evidence, in finding that the deceased was free from contributory negligence. The burden was upon the plaintiff to establish this element of cause of action to the satisfaction of the jury. The deceased must have known and understood that he had no right to cross the tracks from one platform to the other through the picket fence. And beyond this the approaching train was in full view from the time it came around the curve, 900 feet away. Where he was or what he was doing while the train was running that 900 feet, did not appear. If he was standing on the track, he was clearly negligent. If, after the train came in sight, he left one platform to go over to the other, in front of the train, he was clearly negligent; and if he was upon or crossing over the track, without looking for the approach of the train, and did not see it, he was clearly negligent. There is no theory of the case upon which the jury would have been justified, under the evidence, or in view of any inferences that could be drawn from it, in finding affirmatively that the deceased was free from contributory negligence.

We think the court very properly took the case from the jury and dismissed the complaint. The judgment appealed from should be affirmed, with costs. All concur.